UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

NARENDA C. PATEL, individually and as assignee of GOPAL INC. and NSP CORP.,

Plaintiff,

v.     4:14-cv-117

SANMUKH PATEL, BHARTI PATEL, and JITEN PATEL,

Defendants.

## ORDER

### I. INTRODUCTION

Plaintiff Narendra C. Patel, individually and as assignee of GOPAL Incorporated ("GOPAL") and N.S.P. Corporation ("NSP"), seeks recovery from Sanmukh Patel, Bharti Patel, and Jiten Patel ("Defendants") for breach of fiduciary duty, conversion, breach of contract, money had and received, and unjust enrichment, and from Defendant Sanmukh Patel for fraud. ECF No. 8 at 6-10. Defendants have moved to dismiss Plaintiff's complaint pursuant to Fed. R. Civ. P. 12(b)(1) on the ground that assignment of GOPAL's and NSP's claims against the Defendants to Plaintiff violates 28 U.S.C. § 1359's proscription against creation of diversity jurisdiction through collusive assignments of claims. ECF No. 14-5 at 3.

For the reasons set forth below, the Court finds that GOPAL's and NSP's assignment of their claims against Defendants to Plaintiff violates 28 U.S.C. § 1359 and that Plaintiff has failed to sufficiently plead his fraud claim. Therefore, the Court **GRANTS** Defendants' motion to dismiss.

### II. BACKGROUND

Plaintiff, a California citizen, is a fifty percent shareholder in GOPAL and NSP and has been since each corporation was incorporated. ECF No. 8 at 1, 3. Both GOPAL and NSP are Georgia domestic corporations. *Id.* at 2. Defendants, all Georgia citizens, were collectively fifty percent shareholders of GOPAL and NSP. *Id.* at 1-3. Additionally, Defendant Sanmukh Patel was the Chief Executive Officer ("CEO") of both GOPAL and NSP. *Id.* During the time that Sanmukh was CEO and Defendants were all shareholders of GOPAL and NSP, Plaintiff alleges that Defendants converted corporate funds for their own personal use while misleading Plaintiff as to GOPAL's and NSP's financial statuses. *Id.* at 4-6.

On April 4, 2012, Defendants sold their shares in GOPAL and NSP to Sudhir and Indu Patel, Rameshchandra and Bhavika Patel, Alpesh and Kalpu H. Patel, and Ramkrushna and Mitali R. Patel ("Purchasing Group"). *Id.* at 3. On May 21, 2014, GOPAL and NSP assigned to Plaintiff any claims they may have against Defendants, *id.* at 4, and on July 14, 2014, Plaintiff filed this diversity action. *Id.* at 1.

### III. STANDARD OF REVIEW

"[A] motion to dismiss for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1) can be based upon either facial or factual challenge to the complaint." *McElmurray v. Consol. Gov't of Augusta-*

*Richmond Cnty.*, 501 F.3d 1244, 1251 (11th Cir. 2007) (citing *Williamson v. Tucker*, 645 F.2d 404, 412 (5th Cir. 1981)). When the challenge is facial, the usual safeguards of Fed. R. Civ. P. 12(b)(6) apply; therefore, "'the court must consider the allegations in the plaintiff's complaint as true.'" *Id.* (quoting *Williamson*, 645 F.2d at 412). However, where the attack is factual,

> the trial court may proceed as it never could under [Fed. R. Civ. P.] 12(b)(6) or Fed. R. Civ. P. 56. Because at issue in a factual 12(b)(1) motion is the trial court's jurisdiction—its very power to hear the case—there is substantial authority that the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case. In short, no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of the jurisdictional claims.

*Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990) (per curiam) (quoting *Williamson*, 645 F.2d at 412-13) (internal quotation omitted).

Thus, when assessing a Rule 12(b)(1) motion, the Court may dismiss the complaint on any of three distinct bases: "'(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts.'" *McElmurray*, 501 F.3d at 1251 (quoting *Williamson*, 413 F.2d at 413).

Here, Defendants factually attack subject matter jurisdiction, because they "challenge the existence of subject matter jurisdiction in fact, irrespective of the pleadings." *Lawrence*, 919 F.2d at 1529 (internal quotation marks omitted). The issue of fact is whether GOPAL's and NSP's assignment of their claims against Defendants to Plaintiff violates 28 U.S.C. § 1359. Plaintiff bears "the burden of proving by a preponderance of the evidence that the trial court does have subject matter jurisdiction." *See Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981).[1]

### IV. ANALYSIS

The federal diversity jurisdiction statute requires courts to ensure that parties are not improperly manufacturing diversity jurisdiction. *Mississippi ex rel. Hood v. AU Optronics Corp.*, 134 S. Ct. 736, 745 (2014). The Supreme Court has held that a plaintiff may not "create diversity by collusively assigning his interest in an action" to another. *Id.* (citing *Kramer v. Caribbean Mills, Inc. (Kramer II)*, 394 U.S. 823, 825-30 (1969)).

The mere fact of an assignment does not prevent an assignee from invoking diversity jurisdiction. "[U]nder [28 U.S.C. § 1359], any assignee can sue in federal court so long as he was not improperly or collusively made a party in order to invoke federal

---

[1] The decisions of the United States Court of Appeals for the Fifth Circuit entered prior to the close of business on September 30, 1981 are binding precedent in the Eleventh Circuit. *Bonner v. City of Prichard, Ala.*, 661 F.2d 1206, 1209 (11th Cir. 1981).

2

jurisdiction." *Caribbean Mills, Inc. v. Kramer* (*Kramer I*), 392 F.2d 387, 389 (5th Cir. 1968), *aff'd* 394 U.S. 823 (1969). Thus, Section 1359 does not close the door to federal court on bona fide assignees regardless of whether the assignor could have brought the same suit. *Id.*

Situations, like the one here, in which the transfer is between closely related parties—e.g., a corporation and a shareholder—"are highly suspect" and "are subject to even more exacting scrutiny" than are ordinary assignments. *E.g., McCulloch v. Velez*, 364 F.3d 1, 6 (1st Cir. 2004); *see also* 13F Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 3639, at 409-10 (3d ed. 2009) ("In the context of transactions between . . . companies and their . . . shareholders, the cases make it clear that assignments that create diversity of citizenship may be given heightened scrutiny by the court and must be justified by legitimate business purposes."). Although a number circuits have employed a presumption of impropriety in these situations, *see Nat'l Fitness Holdings, Inc. v. Grand View Corporate Centre, LLC*, 749 F.3d 1202, 1208 n.2 (10th Cir. 2014) (citing cases), the Eleventh Circuit has joined the Seventh Circuit in declining to adopt such a presumption. *Ambrosia Coal & Constr. Co. v. Pages Morales*, 482 F.3d 1309, 1314 (11th Cir. 2007) (citing *Herzog Contracting Corp. v. McGowen Corp.*, 976 F.2d 1062, 1067 (7th Cir. 1992)).

As such, there is no binding precedent from "the Supreme Court or the Eleventh Circuit [holding] that where diversity jurisdiction is premised on the assignment of claims [between closely related entities], a presumption of collusion is triggered." *Id.* Nonetheless, "[t]he scars of others . . . teach us caution." St. Jerome, Letter 54, quoted in Bartlett's Familiar Quotations 115 (Geoffrey O'Brien ed., 18th ed. 2012). Conscious of the schism between circuits regarding treatment of these suspect assignments, and duty-bound "to inquire into the circumstances and conditions surrounding the assignment," *Dickson v. Tattnall Cnty. Hosp. Auth.*, 316 F. Supp. 531, 534 (S.D. Ga. 1970), the Court examines the assignment here carefully.

The Eleventh Circuit, as well as other circuits, have set out the following useful factors applicable to the Court's inquiry here: (1) what the nature of assignee's connection to the assigned claim was before assignment—e.g., whether assignee is a real party in interest; (2) whether, but for the assignment, assignee could have brought its claim in federal court; (3) whether assignee provided meaningful consideration for the assignment; (4) whether assignor retained any interest in the assigned claim; and (5) whether a legitimate business purpose motivated the assignment. *See Nat'l Fitness Holdings, Inc.*, 749 F.3d at 1205-06; *Ambrosia Coal & Constr. Co.*, 482 F.3d at 1315-16; *Land Holdings (St. Thomas) Ltd. v. Mega Holdings, Inc.*, 283 F.3d 616, 619 (3d Cir. 2002); *Harrell & Sumner Contracting Co. v. Peabody Petersen Co.*, 546 F.2d 1227, 1229 (5th Cir. 1977); *see generally* Wright et al., *supra*, § 3639, at 393-410. However, "no single [factor] will be dispositive." *Airlines Reporting Corp. v. S & N Travel, Inc.*, 58 F.3d 857, 863 (2d Cir. 1995).

For the reasons set forth below, the Court finds that GOPAL's and NSP's assignment of claims to Plaintiff was collusive in violation of 28 U.S.C. § 1359.

### A. Plaintiff is Not the Real Party in Interest

Plaintiff, in his individual capacity and as assignee of GOPAL and NSP's rights, brings claims for breach of fiduciary duty, conversion of corporate funds, breach of contract, money had and received, and unjust enrichment. ECF No. 8 at 6-12. In the context of corporate litigation, "[s]tate law determines whether a cause of action is direct or derivative." *Hantz v. Belyew*, 194 F. App'x 897, 900 (11th Cir. 2006). GOPAL and NSP are both Georgia corporations. ECF No. 8 at 2. Therefore, the law of Georgia determines whether a claim regarding injuries to GOPAL and NSP is derivative or direct. *Hantz*, 194 F. App'x at 900 ("Georgia applies the law of the state of incorporation to derivative actions."). Plaintiff argues that his claims are direct and that he is therefore the real party in interest.

But, in Georgia, "'the general rule is that allegations of misappropriation of corporate assets and breach of fiduciary duty can only be pursued in a shareholder derivative suit brought on behalf of the corporation, [because] the injury is to the corporation and its shareholders collectively.'" *Southland Propane, Inc. v. McWhorter*, 720 S.E.2d 270, 275 (Ga. Ct. App. 2011). Similarly, because "a shareholders' derivative suit is brought on behalf of the corporation for harm done to it," *Sw. Heath & Wellness, L.L.C. v. Work*, 639 S.E.2d 570, 576 (Ga. Ct. App. 2006), claims alleging breach of contractual obligations owed to corporations are properly derivative actions.

There are, however, exceptions to these general rules. For instance, a shareholder may proceed individually in a direct action if the "shareholder alleges a 'special injury' that would allow a personal cause of action." *Phoenix Airline Servs., Inc. v. Metro Airlines, Inc.*, 397 S.E.2d 699, 701 (Ga. 1990). Adopting the rationale of the Supreme Court of Delaware, the Supreme Court of Georgia has concluded that because recovery in "'individual . . . actions goes to the suing shareholders, not their corporation[,] . . . the plaintiff must allege more than an injury resulting from a wrong to the corporation.'" *Id.* at 702 (quoting *Kramer v. W. Pac. Indus.*, 546 A.2d 348, 351 (Del. 1988)).

Alternatively, in the context of a closely held corporation, "a direct action may nevertheless be proper . . . where the circumstances show that the reasons for the general rule requiring a derivative suit do not apply." *McWhorter*, 720 S.E.2d at 275 (emphasis omitted) (quoting *Work*, 639 at 577). Those reasons for requiring a derivative suit are:

> "(1) to prevent multiple suits by shareholders; (2) to protect corporate creditors by ensuring that the recovery goes to the corporation; (3) to protect the interest of all the shareholders by ensuring that the recovery goes to the corporation, rather than allowing recovery by one or a few shareholders to the prejudice of others; and (4) to adequately compensate injured

4

shareholders by increasing their share values."

*Id.* (quoting *Work*, 639 S.E.2d at 577).

For the following reasons, the Court finds that Plaintiff's claims are derivative. Therefore, GOPAL and NSP, not Plaintiff, are the real parties in interest on Plaintiff's claims alleging breach of fiduciary duty, conversion, breach of contract, money had and received, and unjust enrichment.

### 1. Plaintiff Has Not Alleged a Special Injury

Plaintiff argues, essentially, that he is the only remaining shareholder to whom the Defendants owed fiduciary duties and, therefore, he has suffered a separate and distinct injury. This argument misconstrues the concept of corporate fiduciary duties.

As a preliminary matter, as former officers and managing shareholders of GOPAL and NSP, Defendants owed fiduciary duties not only to Plaintiff as a shareholder, but also to GOPAL and NSP. *See Quinn v. Cardiovascular Physicians, P.C.*, 326 S.E.2d 460, 463 (Ga. 1985) ("It is settled law that corporate officers and directors occupy a fiduciary relationship to the corporation and its shareholders . . . ."). Thus, any breach of fiduciary duty as to Plaintiff was also a breach of fiduciary duty as to GOPAL and NSP.

Further, Georgia courts have interpreted the "special injury" exception to require "an injury *different* from and more than the wrong to the corporation." *William Goldberg & Co., Inc. v. Cohen*, 466 S.E.2d 872, 881 (Ga. Ct. App. 1995) (emphasis added). Thus, "[t]o gain the right to sue directly, the shareholder must be injured directly-independently of the corporation's injury." *Id.* at 882 (emphasis omitted).

In considering the distinction between direct and derivative claims in the context of a suit under the Uniform Limited Partnership Act, the Court of Appeals of Georgia explained "[t]he distinction between derivative and individual actions rests upon the party being directly injured by the alleged wrongdoing." *Hendry v. Wells*, 650 S.E.2d 338, 347 (Ga. Ct. App. 2007) (quotation omitted). "[I]n other words, the question turns on 'the nature of the injury alleged and the entity which sustains the harm.'" *Id.* (quoting *Lenz v. Associated Inns & Restaurants Co. of Am.*, 833 F. Supp. 362, 380 (S.D.N.Y. 1993)). Elaborating on *Kramer v. Western Pacific Industries, Inc.*, 546 A.2d 348 (Del. 1988), on which the Supreme Court of Georgia relied for the "special injury" exception, the Supreme Court of Delaware explained that "a court should look to the nature of the wrong and to whom the relief should go" in determining whether a claim is direct or derivative. *Tooley v. Donaldson, Lufkin & Jenrette, Inc.*, 845 A.2d 1031, 1039 (Del. 2004). That is, in order to sustain a direct claim "[t]he stockholder must demonstrate that the duty breached was owed to the stockholder *and* that he or she can prevail without showing an injury to the corporation." *Id.* (emphasis added). This explication of the distinction between direct and derivative claims comports with Georgia's requirement for an injury independent of the corporation's injury. *See*

5

*William Goldberg & Co., Inc.*, 466 S.E.2d at 881-82.

Here, Plaintiff has failed to show that Defendants' alleged breach of fiduciary duties caused him any specific harm independent of the harm GOPAL and NSP suffered. Instead, he argues only that he has suffered harm different than GOPAL, NSP, and other shareholders because he was the only shareholder at the time of the alleged misconduct. However, in such situations only a derivative action is allowed because, the Plaintiff's "claims are founded upon injuries which are no different from that suffered by the corporation" and Plaintiff cannot prevail without also showing an injury to GOPAL and NSP. *See Grace Bros., Ltd. v. Farley Indus., Inc.*, 450 S.E.2d 814, 817 & n.9 (Ga. 1994).

Therefore, the Court finds that Plaintiff has not suffered a "special injury" sufficient to confer standing for a direct action.

### 2. The Closely Held Corporation Exception is Inapplicable Here

In the context of a closely held corporation, a shareholder may proceed in a direct action even where the "special injury" exception is inapplicable. *See Thomas v. Dickson*, 301 S.E.2d 49, 50-51 (Ga. 1983). In order for this closely held corporation exception to apply, "the circumstances [must] show that the reasons for the general rule requiring a derivative suit do not apply." *McWhorter*, 720 S.E.2d at 275 (emphasis omitted) (quoting *Work*, 639 S.E.2d at 577).

Here, Plaintiff has not presented any argument as to why the reasons for requiring a derivative suit here do not apply. However, a review of the circumstances show that the general rule requiring a derivative suit do indeed apply here.

Allowing Plaintiff to proceed directly against Defendants would prejudice GOPAL's and NSP's other shareholders. While GOPAL and NSP have assigned their claims against the Defendants to Plaintiff, there is nothing in the record indicating the Purchasing Group has similarly assigned or otherwise surrendered their interest in any recovery that might be had from the Defendants. Thus, if Plaintiff were to proceed directly against Defendants, he would potentially recover funds owed to the corporation and would concomitantly deprive the Purchasing Group of the opportunity for any increase in value of their shares that would come with a corporate recovery. *Cf. Work*, 639 S.E.2d at 577 (concluding that the closely held corporation exception did not apply where two shareholders were not parties to the litigation and there was no showing that those shareholders surrendered their interest in the proceedings). Therefore, the circumstances here show that the reasons for requiring a derivative action apply. Plaintiff may not proceed in a direct action under the closely held corporation exception.

The Court finds that because Plaintiff has not alleged a "special injury" sufficient to confer standing to proceed in a direct action against the Defendants and because the closely held corporation exception does not apply, Plaintiff's assigned claims can proceed only as a derivative action;

6

therefore, GOPAL and NSP are the real parties in interest. *See Kilburn v. Young*, 536 S.E.2d 769, 771-72 (Ga. Ct. App. 2000) ("Because the right of action for corporation wrongs is in the corporation, the plaintiff shareholder in a derivative suit is at best a nominal plaintiff, and the corporation is the real party in interest.").

### B. But For the Assignment, Plaintiff Could Not Have Brought These Claims in Federal Court

Having established that Plaintiff's assigned claims are derivative in nature, it is clear that but for GOPAL's and NSP's assignment, Plaintiff could not have brought these claims in federal court.

"There is no question that a corporation is an indispensable party in a derivative action brought by one of its shareholders." *Libby v. Urbanek*, 707 F.2d 1222, 1224 (11th Cir. 1983). The corporation properly is first aligned as a defendant, thus ensuring the corporation's presence. *Id.* However, once joined, the corporation is then realigned according to a practical determination of the parties' real interests. *Id.* Such a determination is to be "'resolved by the pleadings and the nature of the dispute.'" *Id.* (quoting *Smith v. Sperling*, 354 U.S. 91, 97 (1957)). Only where corporate management actively "is 'antagonistic' to the plaintiff shareholder" should the corporation remain a defendant. *See id.* Where corporate management's and the shareholder plaintiff's interests are not actively adverse, however, the corporation properly is realigned as a plaintiff. *Id.*

Here, Plaintiff is suing Sanmukh Patel, former GOPAL and NSP CEO and shareholder, as well as the other former GOPAL and NSP active shareholders. ECF No. 8 at 3. Plaintiff seeks recovery of corporate money that he alleges Defendants converted while they were in a position of active control of GOPAL and NSP. *Id.* at 4-6.

In light of the fact that Defendants are no longer shareholders and are no longer in active control of GOPAL and NSP, it is clear that Plaintiff's, GOPAL's, and NSP's interests—i.e., recovery of converted corporate funds—are aligned here. Therefore, after joining GOPAL and NSP initially as defendants, GOPAL and NSP would be realigned as plaintiffs in this derivative action. Because GOPAL and NSP both are Georgia corporations and Defendants all are Georgia citizens, *id.* at 1-2, this alignment of interests would destroy diversity and divest federal courts of jurisdiction over Plaintiff's derivative action. *See Triggs v. John Crump Toyota, Inc.*, 154 F.3d 1284, 1287 (11th Cir. 1998) ("Diversity jurisdiction requires complete diversity; every plaintiff must be diverse from every defendant.").

Therefore, but for the assignment, Plaintiff could not have brought this action in federal court.

### C. The Consideration Exchanged for GOPAL and NSP's Assignment Was Illusory

"Having decided that absent an assignment this action would have to be dismissed," the Court turns to the question of whether GOPAL's and NSP's

7

assignments were bona fide absolute assignments. *See Harrell & Sumner Contracting Co.*, 546 F.2d at 1229; *see also Ambrosia Coal & Constr. Co.*, 482 F.3d at 131.

Federal jurisdiction is proper where the assignment is a bona fide absolute transfer of a claim, regardless of the motives of the assignment. *See Ambrosia Coal & Constr. Co.*, 482 F.3d at 1315; *see also Kramer II*, 394 U.S. at 828 n.9 (finding that where the transfer is absolute, "transfer is not improperly or collusively made, regardless of the transferor's motive." (internal quotation marks omitted)).

Plaintiff argues that the assignment here was an absolute transfer, focusing on the fact that neither GOPAL nor NSP has retained any interest in the assigned claim. *See* ECF Nos. 15 at 3; 21 at 2. However, in doing so, Plaintiff focuses on but one factor courts look to in considering whether a transfer is collusive or not. In addition to considering whether the assignee is the real party in interest and whether the assignor retains any interest in the assigned claim, the Supreme Court and the Eleventh Circuit also have "examined the consideration exchanged for the assigned claim." *See Ambrosia Coal & Constr. Co.*, 482 F.3d at 1315.

Here, GOPAL and NSP have assigned their claims to Plaintiff in exchange for his promise not to file a lawsuit against them "unless the sums taken by [Defendants] cannot be recovered from [Defendants]." ECF No. 8 at 55, 58. Regardless of whether the Court applies California law, as Plaintiff argues it should under Georgia's *lexi contractus* rule, ECF No. 21 at 3, or basic common law contract principles, forbearance to sue on a claim is not sufficient consideration "when the claim is wholly invalid or worthless." *See Michaelian v. State Comp. Ins. Fund*, 58 Cal. Rptr. 2d 133, 145 (Cal. Ct. App. 1996); Restatement (Second) of Contracts § 74(1) (1981) ("Forbearance to assert or the surrender of a claim or defense which proves to be invalid is not consideration . . . .").

Plaintiff argues that his promise not to sue GOPAL and NSP constitutes sufficient consideration, because, he "had a legal right to sue GOPAL and NSP . . . but gave up that right . . . ." ECF No. 21 at 3. However, as explained above, Plaintiff has no legal claims against GOPAL or NSP to surrender. Rather, his derivative claims are properly brought against Defendants for their alleged malfeasance as shareholders and officers of GOPAL and NSP. Because Defendants no longer are active shareholders or officers of GOPAL and NSP, GOPAL and NSP merely would initially be joined as nominal defendants in Plaintiff's derivative claims. When realigned according to interests, Plaintiff would not have a claim against GOPAL or NSP. Instead, Plaintiff would be the nominal plaintiff pursuing claims on behalf of the real plaintiffs in interest, GOPAL and NSP.

Therefore, because Plaintiff did not have a claim against GOPAL or NSP, his forbearance to sue GOPAL and NSP cannot provide sufficient consideration for GOPAL's and NSP's assignment of their claims against Defendants.

8

### D. Plaintiff Has Failed to Show that the Assignments Were For a Legitimate Business Purpose

Even under the heightened scrutiny for transactions between a corporation and a shareholder, a legitimate business purpose can justify an assignment that creates diversity of citizenship. Wright et al., *supra*, § 3639, at 410 & n.32; *see cf. Ambrosia Coal & Constr. Co.*, 482 F.3d at 1316 (upholding an assignment of a claim where assignee was real party in interest, it existed for a purpose aside from prosecuting assigned claims, and consideration for assignment allowed provided assignee a reduction in tax liability—a legitimate business purpose). Plaintiff has failed to show a legitimate purpose here.

GOPAL's and NSP's CEO, Shilash Patel, stated that GOPAL and NSP made the assignments here so that Plaintiff "could recover money rightfully owed to him for the Defendants' wrongful acts . . . in exchange for Plaintiff agreeing not to sue the corporations because GOPAL and NSP were aware that Plaintiff could file suit against the corporations for his losses incurred if he chose to do so." ECF No. 15-3 at 2-3 (Affidavit of Shilash Patel). Perhaps foretelling the weakness of Shilash Patel's assertion, Plaintiff has referred to the business purpose not as a legitimate purpose, but merely as a "stated business purpose." ECF 21 No. at 6.

To be sure, as Plaintiff argues, the "business purpose is clearly identified in the affidavit." *Id.* However, it is equally clear that Plaintiff has sought "to have a firm anchor in nonsense [rather] than to put out on the troubled seas of thought." *See* John Kenneth Galbraith, The Affluent Society 131 (4th prtg. 1998). When parsed in light of the discussion above, the Court finds that while the purpose is clear, it is far from legitimate. At bottom, GOPAL and NSP have assigned all of the recovery owed to them to a fifty percent shareholder in exchange for that shareholder's promise not to bring a suit against them that the shareholder could not have properly brought in the first place. Thus, GOPAL and NSP have surrendered what is rightfully theirs in exchange for absolutely nothing and called it business.

Accordingly, the Court finds that Plaintiff has failed to offer a legitimate business purpose for GOPAL's and NSP's assignment of their claims to him.

### E. Plaintiff's Fraud Claim

In addition to the derivative claims, Plaintiff also asserts a fraud claim against Defendant Sanmukh Patel. ECF No. 8 at 7. Specifically, Plaintiff alleges that Sanmukh made various false representations to him regarding GOPAL's and NSP's profitability in order to conceal his conversion of corporate funds. *See id.*

Plaintiff has argued that even if the assignment violated 28 U.S.C. § 1359, "dismissal of his individual claims would be improper." ECF No. 21 at 8. In their Answers, Defendants assert Plaintiff has failed to state a claim upon which relief can be granted. ECF Nos. 11 at 1; 12 at 1; 13 at 1. Though neither party has briefed the Court on Plaintiff's fraud claim, the Court finds that Plaintiff has failed to satisfy the

9

particularity requirements of Fed. R. Civ. P. 9(b).

The Eleventh Circuit has held that "pursuant to Rule 9(b), a plaintiff must allege: '(1) the precise statements, documents, or misrepresentations made; (2) the time, place, and person responsible for the statement; (3) the content and manner in which these statements misled the Plaintiffs; and (4) what the defendants gained by the alleged fraud.'" *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1291 (11th Cir. 2010) (quoting *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1380-81 (11th Cir. 1997)).

Here, Plaintiff has not alleged the specific times and places of Defendant Sanmukh Patel's misrepresentations. Therefore, he has failed to state a claim under Rule 9(b)'s heightened pleading standards.

## V. CONCLUSION

For the above reasons, the Court finds that GOPAL's and NSP's assignment of their claims arising out of Defendant's alleged conversion of corporate funds to Plaintiff violated 28 U.S.C. § 1359's proscription against collusive assignments.

Plaintiff is not the real party in interest here. Rather, Plaintiff's claims are derivative in nature and therefore GOPAL and NSP are the real parties in interest. Because Plaintiff's claims against Defendants are derivative and GOPAL's, NSP's, and Plaintiff's interests align, Plaintiff could not have brought these claims in federal court but for the assignment, since realignment of the parties' interests would destroy diversity.

Further, Plaintiff has failed to show that the claim assignment was a bona fide absolute transfer. First, Plaintiff's forbearance from suit was not sufficient consideration because Plaintiff had no legal claim against GOPAL and NSP to surrender. Second, Plaintiff has failed to show that GOPAL and NSP assigned their claims to Plaintiff for a legitimate business purpose.

Therefore, the Court **GRANTS** Defendant's motion to dismiss Plaintiff's claims for breach of fiduciary duty, conversion of corporate funds, breach of contract, money had and received, and unjust enrichment. Plaintiff has asked that the Court allow leave to refile the assigned claims with GOPAL and NSP added as defendants should the Court dismiss the assigned claim. The Court will not do so. As explained above, after realignment according the parties' real interests, the Court still will lack jurisdiction over the derivative action. Accordingly, the Clerk is directed to **DISMISS** Plaintiff's breach of fiduciary duty, conversion, and breach of contract claims **WITH PREJUDICE**.

The Court will, however, allow Plaintiff leave to refile his individual fraud claim against Defendant Sanmukh Patel if he can satisfy Fed. R. Civ. P. 9(b)'s heightened pleading requirements. Therefore, the Clerk is directed to **DISMISS** Plaintiff's fraud claim **WITHOUT PREJUDICE**.

This 6 day of October 2014.

B. AVANT EDENFIELD, JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA

10